FILED
FEB - 1 2023
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

JUSTIN TRAVIS TAYLOR,

    Petitioner,

v.                                                   Criminal No. 4:19-cr-87

UNITED STATES OF AMERICA,

    Respondent.

## MEMORANDUM OPINION AND ORDER

Before the Court is Justin Travis Taylor's ("Petitioner") Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Motion"). Pet'r's Mot. for Comp. Release ("Mot."), ECF No. 46. The Government opposed the motion. Gov't's Resp. in Opp. to Mot. ("Resp. Opp."), ECF No. 48. Petitioner has not replied. Accordingly, this matter is now ripe for judicial determination. For the reasons below, Petitioner's Motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL HISTORY

On December 30, 2019, Petitioner was named in a One-Count Criminal Information that charged Defendant with Receipt of Child Pornography, in violation of 18 U.S.C. § 2552A(a)(2). Crim. Inform., ECF No. 19. On January 2, 2020, Petitioner pled guilty to Count One of the Criminal Information. ECF Nos. 23-26. At that time, Petitioner's Presentence Investigation Report ("PSR") reported that Petitioner was diagnosed with asthma, an Unspecified Depressive Disorder and Attention Deficient Hyperactivity Disorder. PSR at 20-21, ECF No. 28. Petitioner was assessed with a total offense level of 27 and criminal history category I, and his recommended guidelines sentence was 70 to 87 months. *Id*. at 24. On July 28, 2020, the Court sentenced Petitioner to seventy-two (72) months imprisonment followed by twenty (20) years

supervised release. ECF Nos. 35-36. Petitioner is currently incarcerated at FCI Fort Dix, a low-security federal prison in New Jersey with a projected release date of October 21, 2024. Mot. at 3; *see* Mot. Ex. 4. He is not eligible for home confinement.

Petitioner alleges that he submitted his compassionate release request to the Warden at FCI Fort Dix in January 2022. Mot. at 4. However, the Bureau of Prisons ("BOP") has no record of Petitioner's request. *Id.*; Resp. Opp. at 9. On March 3, 2022, Petitioner filed his *pro se* motion for compassionate release. Letter Mot. Compassion. Release, ECF No. 42. On April 6, 2022, Petitioner filed the instant Motion through counsel. *See* Mot., ECF No. 46. On April 21, 2022, the Government opposed the motion. Resp. Opp., ECF No. 48. Petitioner has not replied. Petitioner argues that his physical and mental health conditions in addition to the sentencing factors under 18 U.S.C. § 3553(a) support his compassionate release. *See* Mot.; Letter Mot. Compassion. Release. Accordingly, Petitioner requests that the Court grant him compassionate release on home confinement. *Id.*

## II. LEGAL STANDARD

### A. The Threshold Requirement

A petitioner may bring a motion to modify their sentence after they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [petitioner]'s behalf or the lapse of 30 days from the receipt of such a request by the warden of the [petitioner]'s facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release has two options after requesting that the BOP bring a motion on their behalf: (1) exhaust their administrative remedies; or (2) wait 30 days from the date of their initial request to the BOP. *United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) ("§ 3582(c)(1)(A) outlines two routes – one of which does not require exhaustion of

administrative remedies."). In other words, a petitioner may satisfy the threshold requirement if they "request[] the Bureau of Prisons to bring a motion on their behalf and *either* fully exhaust[] all administrative rights to appeal the Bureau's decision *or* wait[] 30 days from the date of their initial request to file a motion in the district court." *Id.* (emphasis in original). Thus, a petitioner who made a request to the BOP at least 30 days prior may seek compassionate release with the district court whether the BOP has ruled on the request or not. *Id.* (holding petitioner satisfied the threshold requirement by filing his compassionate release motion 149 days after submitting a request to the warden, which the warden denied) (citing *United States v. Garrett*, 15 F.4th 335, 338 (5th Cir. 2021); *United States v. Harris*, 973 F.3d 170, 171 (3rd Cir. 2020); and *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020)). Moreover, the threshold requirement is a non-jurisdictional claim-processing rule, and thus may be waived or forfeited if not timely raised. *Id.* at 129-30 (collecting cases from sister circuits holding the same).

### B. The Compassionate Release Standard

As amended by the FIRST STEP Act, a court may modify a term of imprisonment by motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" were previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before the FIRST STEP Act was passed, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary

3

and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

U.S.S.G. § 1B1.13 is now outdated, however, following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020); *see also United States v. Lisi*, 440 F. Supp. 3d 246, 250 (S.D.N.Y. 2020), *reconsideration denied*, No. 15 CR. 457 (KPF), 2020 WL 1331955 (S.D.N.Y. Mar. 23, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release . . . [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts . . . ."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive."). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

### III. DISCUSSION

#### A. The Threshold Requirement

The Court finds that it lacks jurisdiction to rule on Petitioner's Motion because Petitioner has not satisfied the threshold requirement. A petitioner may bring a motion to modify his or her

sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.* Petitioner alleges that he submitted a request for compassionate release to the Warden at FCI Fort Dix in January 2022, however, he nor his counsel provide any documentation to support a finding that Petitioner met the exhaustion requirement.

In any event, Petitioner argues that the Court should waive the exhaustion requirements because the instant Motion places the Government, and the BOP, on notice of Petitioner's desire to seek compassionate release. Mot. at 5. The exhaustion requirement may be waived under the following circumstances: (1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice. *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) *citing Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). However, the Court finds no reason to waive the exhaustion requirements under the circumstances since Petitioner had, and still has, ample time to properly comply with § 3582(c)(1)(A). Accordingly, the Court finds that Petitioner has not provided enough information to satisfy the exhaustion requirements pursuant to 18 U.S.C. § 3582(c)(1)(A). *See United States v. Marshall*, 2020 U.S. App. LEXIS 36134 at *5 (4th Cir. 2020) ("The requirements outlined in § 3582(c)(1)(A) are mandatory, non-jurisdictional claim-processing rules that must be followed.").

### B. Petitioner's Compassionate Release Request

Because Petitioner has not exhausted his administrate remedies, the Court does not have authority to grant his compassionate release request. Notwithstanding the above, even if the Court had such authority, Petitioner fails to provide an extraordinary and compelling reason for his early release on home confinement.

Although Petitioner argues that his medical conditions, including asthma and obesity (body mass index of 33.9), demonstrate a particularized susceptibility to COVID-19, he fails to demonstrate that he has a particularized risk of contracting COVID-19 at FCI Fort Dix, or that there would be less risk of contracting COVID-19 if he were released on home confinement. Mot. at 6-11; *see* Mot., Ex. 1; *United States v. Feiling*, 453 F. Supp. 3d 832, 841-42 (E.D. Va. 2020) (acknowledging petitioner's higher risk of suffering COVID-19 complications due to his medical conditions but also finding that petitioner failed to show a particularized risk of contracting COVID-19). Petitioner notes the lingering risk of contracting the coronavirus at his prison facility and argues that FCI Fort Dix has failed to properly manage to facility to mitigate the spread of COVID-19 among the inmate population. Mot. at 11-17. FCI Fort Dix houses approximately 3,821 inmates.[1] As of January 30, 2023 four inmates and zero staff members at FCI Fort Dix are positive for COVID-19.[2] *See United States v. Woolridge*, No. 3:09cr156 (DJN), 2021 WL 415131, at *5 (E.D. Va. Feb. 5, 2021) (finding no particularized risk where there were only eight active cases of COVID-19 at the petitioner's facility); *see also United States v. Wilkins*, No. 7:17-cr-407-JMC-1, 2021 WL 194311, at *3 (D.S.C. Jan. 20, 2021) (finding no particularized risk where there were only ten active cases at the petitioner's facility). In addition, as of January 30, 2023, the BOP reports that 1300 inmates and 134 staff have contracted and

---

[1] *COVID-19 Cases*, Fed. Bur. of Prisons (January 30, 2023), https://www.bop.gov/coronavirus/index.jsp.
[2] *Id.*

6

recovered from COVID-19, including Petitioner.[3] On the other hand, Petitioner proposes living with his mother in Newport News, Virginia, a city that has an average of 36 new COVID-19 cases a day.[4] Mot. at 20. With the added protection of a COVID-19 vaccine, vaccinated inmates with various comorbidities, like Petitioner, are now better positioned against a COVID-19 diagnosis than the inmates who were released prior to widespread accessibility to a COVID-19 vaccine. Accordingly, since the Court continues to exercise its discretion in releasing the most vulnerable inmates in light of the pandemic, the Court declines to release inmates who lack a significant showing of potential fatality from a COVID-19 diagnosis. For these reasons, Petitioner's arguments do not support a finding that there is a particularized risk of contracting COVID-19 at his facility or that he would be better protected if released.

Petitioner also argues that his incarceration has "drastically amplified" his anxiety and depression because the FCI Fort Dix has also failed to help inmates maintain their mental health. Letter Mot. Compassion. Release at 2. Namely, Petitioner points to the impact of frequent lockdowns of FCI Fort Dix facilities, COVID-19 outbreaks, halted programming, and restrictions on visitations on the mental health of inmates. *Id.* at 2-3; Mot. at 16-17. The Court recognizes and in no way minimizes the harsh realities that incarcerated individuals have faced during the pandemic. However, Petitioner has not shown that these harsher conditions of confinement are unique to him, or "extraordinary," for purposes of compassionate release. *See United States v. Ramirez*, No. 98 CR 927 (CM), 2021 WL 5233512, at *5 (S.D.N.Y. Nov. 10, 2021). Indeed, "[i]f challenging the conditions of confinement caused by the pandemic warranted a sentence reduction here, essentially every inmate who has been in BOP custody at any time since March 2020 would be entitled to a sentence reduction." *Id.* Thus, Petitioner has failed to show that the

---

[3] *Supra* note 4.
[4] *Tracking Coronavirus in Newport News, Va.: Latest Map and Case Count*, N.Y. TIMES (January 30, 2023), https://www.nytimes.com/interactive/2021/us/newport-news-virginia-covid-cases.html.

COVID-19 pandemic constitutes an extraordinary and compelling reason warranting relief. *Feiling*, 453 F. Supp. 3d at 841; *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.").

Finally, the § 3553(a) factors do not weigh in favor Petitioner's release. As an initial matter, the seriousness of Petitioner's underlying offense remains unchanged. Petitioner knowingly received child pornography and used his position as a soccer referee to gain access to the contact information of underage girls. PSR at 4-16. Petitioner also admitted to messaging numerous underage girls to solicit nude images, send videos of himself masturbating, and engage in sexually explicit conversations. *Id.* Courts have denied compassionate release requests from petitioners convicted of crimes involving child pornography after weighing their potential dangerousness. *Feiling*, 453 F.Supp.3d at 841 (denying compassionate release in part because the petitioner committed his offense while at home and wanted to return home to finish his sentence); *United States v. Meizin*, 2020 WL 1985042, at *5 (N.D. Ohio Apr. 27, 2020) (denying compassionate release because of the easy access to electronic devices that would allow the petitioner to reoffend); *United States v. Hylander*, 2020 WL 1915950, at *3 (S.D. Fla. Apr. 20, 2020) (denying compassionate release because the petitioner wanted to return to the location of his offense upon release). Although Petitioner has a criminal history score of zero, the Court finds the serious nature of Defendant's underlying conduct and criminal offense to weigh heavily against his early release on home confinement. *See id.* at 18.

To his credit, Petitioner has completed two educational courses, is waitlisted for the nonresidential drug treatment program, and maintained a job in Food Service. Mot. at 17; Mot., Ex. 2. Petitioner also has not had any disciplinary infractions while incarcerated. Mot., Ex. 3.

8

Moreover, Petitioner has served over half of his sentence and is assessed to have a low risk of recidivism. Mot. at 3; Mot., Ex. 4. However, as noted by sister courts, a "defendant's rehabilitation alone proves insufficient to warrant a sentence reduction." *See United States v. Woolridge*, 2021 WL 415131, at *7 (E.D. Va. Feb. 5, 2021); *see also United States v. Ahmad*, No. 1:11-cr-554-TSE, ECF No. 75 (E.D. Va. Apr. 8, 2021) (finding that the defendant's coursework did not support compassionate release, reasoning that "[i]t is not uncommon for a defendant to take educational classes to pass the time in prison"). In addition, Petitioner has not completed any vocational courses or mental health and sex offender programs as recommended by the Court at sentencing. Resp. Opp. at 27. Despite some evidence of Petitioner's rehabilitation, overall, the Court finds that the § 3553(a) factors do not weigh in Petitioner's favor and his release would not promote the respect for law or provide adequate deterrence. Therefore, in considering the factors above, in addition to the 18 U.S.C. § 3553(a) factors, the Court finds that Petitioner is not entitled to compassionate release. For the foregoing reasons, Petitioner's Motion for Compassionate Release is **DENIED**.

The Court **DIRECTS** the Clerk to provide a copy of this Order to Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Newport News, Virginia
February /, 2023

Raymond A. Jackson
United States District Judge